THE STATE OF NEBRASKA, EX REL. J. M. McKENZIE, v. J. C. McBRIDE, STATE TREASURER.

School Fund: CONSTITUTIONAL LAW. Sections three and four, Article VIII, of the Constitution, must be construed so as to apply the rents of unsold school lands to the support and maintenance of common schools throughout the state, and not to be vested in the permanent school fund.

APPLICATION for mandamus.

*George H. Roberts, Attorney-General,* for the relator.

*J. C. McBride,* in person.

GANTT, J.

This is an original application for a writ of mandamus against the defendant, as state treasurer. The relator states that there is now in the state treasury a certain amount of money, accrued from leasehold of school lands of the state, subject to apportionment and division among the several counties of the state; and that the defendant refuses to pay out the said money

upon the apportionment made by the relator, according to the enumeration of the youth of the said several counties.

The refusal of the defendant to credit this money as demanded, for the support and maintenance of the common schools throughout the state, and pay over the same upon the apportionment made by the relator as superintendent of public instruction, is grounded on the second subdivision of section three, article VIII, of the new constitution. This section provides, that "the following are hereby declared to be perpetual funds for common school purposes, of which the annual interest or income only can be appropriated, to wit: * * * Second— All moneys arising from the sale *or leasing* of sections number sixteen and thirty-six in each township in the state, and the lands selected, or that may be selected in lieu thereof." But section four of this article declares, that "all other grants, gifts and devises that have been, or may hereafter be made to this state, and not otherwise appropriated by the terms of the grant, gift, or devise, the interest arising from all the funds mentioned in the preceding section, *together with all the rents of the unsold school lands,* and such other means as the legislature may provide, shall be *exclusively* applied to the support and maintenance of schools in each school district in the state."

Now, when these sections are considered in connection with the former legislation in relation to the school funds, it seems clear, that the word "leasing" in the third section, and the word "rents" in the fourth section, are used as synonymous terms; and, therefore, in respect to the objects to which the money arising from the leasing or renting of the unsold school lands shall be applied, there is a clear, direct conflict in the sections. The one places the money in the permanent school fund of the state; and the other declares that it shall be

*exclusively* applied to the support and maintenance of common schools throughout the state.

What was the intent of the law-makers in respect to the use to which this money should be applied? Section seven of the article of the constitution referred to, provides, that "provision shall be made by general law for an equitable distribution of the *income* of the fund set apart for the support of common schools, among the several districts of the state." · Again, section seventeen of the legislative act relative to school funds, approved June 24, 1867, authorizes the county commissioners of the several organized counties to lease school lands upon certain conditions, one of which is, that the lessee pay for the use of the land the annual rate of six per cent upon the appraised value thereof; and it is provided, that, at the expiration of every five years, the land shall be appraised, and the "valuation made by the appraisers shall (provided it be not less than the former appraisement), be the basis of the *rental* for the five years succeeding." It seems that this section was intended to secure an annual rent or income from the unsold school lands and thereby increase the means applied to the support and maintenance of common schools of the state; and these rents have heretofore been uniformly so applied and used. And this source of support to the schools does not, in any way, affect the grant of lands to the state for school purposes; it does not diminish the proceeds arising from the sale of these lands, nor in any manner impair the fund, which is by the constitution declared to remain forever inviolate, as a perpetual fund for school purposes.

Rent is said to be a certain yearly profit arising out of lands and tenements as a compensation for the use thereof, and therefore is properly termed an *income;* hence, it may be included in the distribution of school money authorized by section seven above referred to.

Upon an examination of the constitution in respect to the question propounded, and in view of the condition of things existing at the time the constitution was framed and adopted, as well as in accordance with the rule of construction of statutory law, we must conclude that section four, article VIII, clearly expresses the intent of the law-makers as to the specific objects to which the money arising from the rental of school ·lands must be applied, and this section must prevail.

PEREMPTORY WRIT GRANTED.